to accept more than eight hours as a day's work was involved, and Hatch, J., said:

"Had the city itself performed this work, it would have been within the rule we have announced, and subject to the obligation imposed by the law. How can the defendant plead exemption from such statute, when it has voluntarily, in terms, incorporated it in its contract, and agreed to be bound by and carry out its terms?"

The act of the relator in entering the competition for the municipal work was voluntary. He was advised by the usual advertisement of the terms of the contract. He knew that the city was under obligation, by virtue of valid legislative enactment, to pay the prevailing rate of wages. He was under no compulsion to bid for the work. He was willing to act for the city, and to assume the conditions imposed upon it, of his own free will. And, apprised of the facts, he entered into an agreement which he cannot now be heard to disavow. "Defendant, by bidding and accepting the contract, became the recipient of all the benefits which accrue therefrom, and he should not now be heard in repudiation of lawful obligations assumed thereby." People v. Beck, supra. The motion must be denied.

Motion denied.

---

(52 App. Div. 579.)

## WRIGHT v. ROSENBLOOM et al.

(Supreme Court, Appellate Division, Fourth Department. June 12, 1900.)

SCHOOLS—POWERS OF CITY BOARD OF EDUCATION—EXPENDITURES.

The board of education of a city, given by its charter the supervision and control of the school system of the city, and authorized to make such payments as may be needed for the support of such system, and "to defray the contingent expenses of the board" from the school fund, is not authorized to expend the sum of nearly $900 in defraying the expenses of two members of the board and its clerk in attending a distant meeting of the National Educational Association, which cannot fairly be said to have any connection with the duties with which such board is charged.

Appeal from judgment on report of referee.

Action by Edward C. Wright against Daniel Rosenbloom and others, comprising the board of education of the city of Syracuse. From a judgment for plaintiff entered on the report of a referee, defendants appeal. Affirmed.

The following is the opinion of the referee:

This action is brought by a taxpayer of the city of Syracuse to restrain payment by the board of education of that city for the expenses incurred by the clerk and two members of such board in attending the annual convention of the National Educational Association, held at Los Angeles, Cal., on July 11 to 15, 1899. On June 7th the board, by resolution, directed its clerk to proceed to Los Angeles, and arrange for such of its members as might be able to attend the convention. Pursuant to this resolution, the clerk and two of the commissioners left Syracuse on July 3d. They reached Los Angeles late on the evening of the 11th. The next day they attended a meeting of a section of the convention, devoted to school administration, and heard various papers and discussions, largely upon questions connected with the ventilating and heating of school buildings. Apparently this was the only meeting in which they took part, although they went to one or two of the general meetings,—as one of them expresses it, to see the room in which they were held, and the assemblage. On the evening of the 15th they started on their return, reaching Syracuse about August 4th. The expense of the

trip amounted to $888.75. The convention at Los Angeles is one of a series which has been continued for many years. These meetings attract teachers, superintendents, and others interested in educational matters, and at them doubtless many valuable papers are read, and many interesting discussions take place. These papers and discussions are fully reported, and are published in books, which can be purchased by any one interested. Attendance upon these conventions in the past seems to have resulted in no practical benefit to the Syracuse schools. Probably none could be hoped for which would not equally result from a perusal of the reports, except for a consideration pointed out by one of the witnesses. He does not regard, he says, the meetings of the convention as the principal thing, but in the intervals between the meetings, and at the hotels, much information can be obtained from the informal talks and discussions which then take place. No claim is or can be made, upon the evidence, that these expenditures were fraudulent or exaggerated, or in any way the result of bad faith. The sole question presented is as to the authority of the board to audit and pay them. The defendants allege that under the charter of the city the board of education is authorized to expend the school fund "to defray the contingent expenses of the board." What these contingent expenses may be is largely a matter of discretion. If the members deem it wise, they say further, and for the interest of the schools, to send delegates to this or any other convention, they are at liberty to do so, and charge the amount paid therefor as a contingent expense. I cannot agree with the defendants in their contention. The board of education is a body having such powers, and such powers only, as are conferred upon it by statute, either expressly or by implication. Its function is the supervision and control of the school system of the city. It is allowed to make such payments as may be needed for the support and maintenance of this system. Charter of Syracuse, § 172. That is the very object and purpose to which each of the expenditures expressly authorized by the section is directed. When, therefore, in connection with them, a general phrase in regard to contingent expenses is used, it must be construed with reference to the rest of the provisions with which it appears. The contingent expenses which the board may pay are expenses related to the school system of the city, incurred for its benefit, necessary for its maintenance. Here the authority of the board stops, and this is the test by which such a payment as the one at issue must be measured. Yet a rigid rule may not be laid down. The courts will not inquire too curiously as to just what payments are for the benefit of the schools. The board is given a wide discretion. Where there is room for difference of opinion, where it can fairly be seen that a given expenditure may tend to promote the purposes for which the board is organized, then its judgment is final. Thus, undoubtedly, there may be occasions which would authorize the payment of traveling expenses. Each case must stand by itself. But one principle is clear: Where an expenditure is not directed to the support of the school system, where there is no palpable connection between the object to be attained thereby and the object for which the board exists, then it is unauthorized. The connection must be direct, as has been said; it must be clear; it cannot be merely fanciful, or one to be deduced by strained or farfetched reasoning. For this reason it has been held that a village may not use its funds in the entertainment of visiting editors. Gamble v. Village of Watkins, 7 Hun, 448. Nor has it power to employ them to promote a public celebration. Tash v. Adams, 10 Cush. 252. Yet of such cases it might well be said that the influx of visitors would help the municipality. But the possible benefits are too remote. There is too little connection between them and the purposes for which the municipality is organized. In the case at bar the idea of the board seems to be that the presence of the commissioners and their clerk at Los Angeles would tend to make them more useful officers; to better fit them for their duties; and that in this way the schools would be benefited. I cannot hold that this is enough. The broadening of the mental faculties that results from travel and the attrition of mind on mind is well known. Still the advantages to cities are too indirect to justify on this ground journeys by their officers at the public expense. Nor may a municipal board use the public funds held by it in trust for the education of its members or employés. This is not within the powers conferred by the charter, either

expressly or by implication.  No action short of the legislature can render such a proceeding valid.  As the journey to Los Angeles, therefore, is not found to be directly connected with the duties which the board and their clerk were chosen to perform, the plaintiff must succeed in this action.  In such cases there is always a certain amount of hardship involved.  Payments have been made in reliance upon the supposed authority of the board of council.  Yet it is well that the lesson of caution in handling public funds should be learned. It is important that all municipal officials should realize the danger of expenses not made clearly and directly for the public benefit.

Argued before ADAMS, P. J., and McLENNAN, SPRING, WILLIAMS, and LAUGHLIN, JJ.

James E. Newell, for appellants.
Wright & Olmsted, for respondent.

PER CURIAM.  Judgment affirmed, with costs, on opinion of the referee.

---

(32 Misc. Rep. 68.)

## MOORE v. MOORE.

(Supreme Court, Special Term, New York County.  June, 1900.)

1. EXECUTORS AND ADMINISTRATORS—ACCOUNTING—EVIDENCE.
   On an accounting with an administratrix, evidence that her decedent held money belonging to complainant, and that in a letter written to her he made a statement showing how he had invested the funds, is sufficient to show that decedent held such funds, and that a fiduciary relation existed between him and complainant in respect thereto.

2. SAME.
   On an accounting with an administratrix, evidence that her decedent held funds for complainant, and in a letter to her he inclosed a statement showing the amount due complainant, is sufficient to entitle complainant to a judgment for such amount, where defendant does not show that such sum had been repaid.

3. SAME—DISMISSAL OF ACTION.
   Where a complaint for accounting states a cause for equitable cognizance, the fact that an accounting is rendered unnecessary by defendant's failure to produce any evidence is not cause for dismissal on the ground that the case as proven is not one for equitable relief, and complainant has an adequate remedy at law, since, where an answer is interposed, the court will grant the judgment which shall be consistent with the case made by the complaint, and embraced within the issues, irrespective of the relief demanded.

4. SAME—WAIVER OF ACCOUNTING.
   Where, on an accounting with an administratrix as to money held by her decedent, it is admitted that decedent in his life made a formal statement of his account with complainant, and that such account was unpaid, complainant may waive his right to an accounting, and stand on the balance shown by such statement, where his remedy is sufficient without it.

5. SAME—DISMISSAL AS TO ADMINISTRATRIX INDIVIDUALLY.
   A complainant in an accounting against an administratrix may waive a claim against realty purchased by decedent with complainant's money, and devised to such administratrix individually, and consent to the dismissal of the action without costs against defendant individually, where his remedy is sufficient without it.

6. SAME—LIMITATION OF ACTIONS.
   Where a decedent, who died in 1895, on April 25, 1890, inclosed a formal statement of his account with complainant, acknowledging his indebtedness, and showing a balance due her, an action commenced by complainant against his administratrix in 1895 was not affected by the six-years statute of limitations.